RECEIVED

DEC 1 5 2015

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| IBERIABANK | CIVIL ACTION NO. 6:14-CV-2448 |
| v. | JUDGE DOHERTY |
| DARRYL R. BROUSSARD, ET AL. | MAGISTRATE JUDGE WHITEHURST |

**RULING ON APPEAL**

Currently pending before the Court is an Appeal of an Order issued by the Magistrate Judge filed by plaintiff Iberiabank. [Doc. 44] Pursuant to the appeal, Iberiabank seeks review of Magistrate Judge C. Michael Hill's Order granting in part and denying in part defendant Darryl R. Broussard's Motion for Leave to File a "Second Amended, Supplemental, and Restated Counterclaim." [Doc. 42] Following a review of the Magistrate Judge's Order, the briefing, the record, and the applicable law, the decision below is AFFIRMED IN PART and REVERSED IN PART.

I.  **Factual and Procedural Background**

Iberiabank filed this suit against Darryl R. Broussard and Brayton Peltier, alleging multiple claims arising from Mr. Broussard and Mr. Peltier's actions during their employment with Iberiabank and its predecessor Teche Federal Bank ("Teche"). On January 23, 2015, a consent judgment was entered resolving all claims between Iberiabank and Mr. Peltier. [Doc. 20] Generally the allegations by Iberiabank against Mr. Broussard are as follows: Iberiabank is the successor to Teche as a result of a May 31, 2014 merger of the two banks. Broussard served as the Senior Vice President and Chief Lending Officer of Teche from 1996 until the date of the merger. Following the merger, Broussard

became an employee of Iberiabank until his employment was terminated by Iberiabank on July 3, 2014. Soon after Broussard learned that Teche would be acquired by Iberiabank, he began actively breaching his fiduciary obligations by assisting Teche lending officers in their efforts to secure positions with competitor banks.[1] As a result of Broussard's efforts, in May of 2014 the Teche lending officers and Broussard accepted positions at JD Bank, a Teche and Iberiabank competitor. Iberiabank alleges Broussard divulged Teche and Iberiabank's proprietary and confidential information to JD Bank, including individual bank officers' loan portfolio information. Iberiabank further alleges in May of 2014, Broussard accessed over 4,000 business files belonging to Teche and Iberiabank through Iberiabank and Teche's computers, and knowingly and deliberately deleted the files from Teche and Iberiabank's computer network. [Doc. Nos. 18, 23] On July 3, 2014, Iberiabank terminated Broussard and made a demand for arbitration. [Doc. 18, pp. 5-6] Thereafter, the parties agreed to dismiss the arbitration proceeding, and Iberiabank filed this lawsuit on August 7, 2014. [Doc. 43, p. 4]

Following two amendments and a supplementation to the original complaint, the claims asserted against Mr. Broussard by Iberiabank are: (1) Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; (2) Violation of La. R.S. § 14:73.7 ("Computer Tampering"); (3) Misappropriation of Trade Secrets; (4) Material Breach of the Change In Control Severance Agreement; (5) Material Breach of the Iberiabank Employment Agreement; (6) Breach of Fiduciary Duties; (7) Unfair Trade Practices; and (8) Fraud. [Doc. 23]

---

[1] According to Iberiabank, most of these lending officers had previously accepted employment offers with Iberiabank.

On September 5, 2014, Broussard filed his original answer and counterclaim. The counterclaim consisted of a single claim of breach of contract. [Doc. 8] On October 6, 2014, Mr. Broussard filed a "First Amended, Supplemental and Restated Counterclaim" [Doc. 15], wherein he added a claim for declaratory judgment (seeking a declaration that the non-competition clause of his employment agreement was void and unenforceable), in addition to his claim of breach of contract. On October 9, 2014, the Court issued a scheduling order in this matter setting a deadline of February 3, 2015 for joinder of parties and amendment of pleadings. [Doc. 16] Thereafter, on February 19, 2015 Mr. Broussard filed a document entitled "Consent Motion for Leave to File First Supplemental and Restated Counterclaim," which was subsequently granted. With this pleading Broussard set forth a new claim that Iberiabank is liable for his attorney's fees "as provided by the Change in Control and Severance Agreement," and deleted his claim for declaratory judgment. [Doc. Nos. 24, 24-1]

On July 20, 2015, Broussard filed a motion for leave to file a "Second Amended, Supplemental, and Restated Counterclaim." [Doc. 35] In his motion for leave, Mr. Broussard asserts, "Recent discovery depositions taken during the week of May 18, 2015, revealed facts suggesting additional claims might be available to Mr. Broussard." [Doc. 35, p.1] In light of the foregoing, Mr. Broussard sought leave "to add claims under or related to Intentional Interference with Business Relations and Abuse of Rights," or in the alternative, negligence pursuant to La. Civ. Code art. 2315. [Doc. 35, pp. 1-2] According to Broussard, "Any and all new claims . . . are based on the same transaction or occurrence that forms the basis of the underlying proceeding and are believed to be compulsory counterclaims." [Id. at 2] Mr. Broussard further sought to add Iberiabank's general liability insurer, "XYZ Insurance Company," as a party to this suit. [Id. at 2; Doc. 43, pp. 1-2]

Iberiabank opposed the motion as untimely. [Doc. 38]

On August 4, 2015, Magistrate Judge Hill held a hearing on the motion for leave and thereafter issued a document entitled "Minutes of Telephone Hearing and Order"[Doc. 42], stating as follows:

> Considering the Motion, Opposition thereto and the arguments of counsel, the Motion is **granted in part and denied in part** as follows: Leave is granted for the filing of the Second Amended, Supplemental and Restated Counterclaim insofar as the pleading . . . deletes entirely from the First Amended Counterclaim the request for declaratory judgment and adds claims for or related to Intentional Interference with Business Relations, Abuse of Rights and or La. C.C. article 2315 against IberiaBank.
>
> Leave to add XYZ Insurance Company as an additional new party to this action is **denied.**
>
> IberiaBank is hereby **granted** an extension of time through **September 18, 2015,** including weekends, to complete discovery on the newly asserted compulsory counterclaims. This extension shall not apply to Darryl R. Broussard. More specifically, Darryl R. Brousard shall not be permitted additional time to engage in discovery on these newly asserted claims without first obtaining leave of court.

[Doc. 42 (emphasis in original)] No other analysis or reasoning is set forth in the document.

In this appeal, Iberiabank argues the new claims asserted by Broussard are "inexcusably untimely," because: (1) Broussard identified his new claims as "compulsory counterclaims" to the Magistrate judge, which by definition means those claims existed at the time Broussard answered Iberiabank's complaint, and therefore Broussard has unduly delayed asserting those claims [Doc. 44-1, p. 10]; (2) the new information upon which Broussard justifies his late filing relates only to the amount of damages - not to the existence of his cause of action - and thus the claims are untimely [Id. at 11]; and (3) allowing the amendment will cause Iberiabank "great prejudice." [Id. at 15]

## II. Legal Standards

### A. Standard of Review

Where a party objects to an order of the magistrate judge on a non-dispositive pretrial matter referred to the magistrate judge for disposition, the district court may "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed.R.Civ.P. 72(a); *see also* 28 USC § 636(b)(1)(A). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *see also United States v. Stevens*, 487 F.3d 232, 240 (5th Cir. 2007). "When a party objects to a magistrate judge's ruling on the ground that it is contrary to law, the party must demonstrate that the magistrate judge erred in some respect in his legal conclusions." *Smith v. Smith*, 154 F.R.D. 661, 665 (N.D.TX. 1994); *see also Lebron v. ENSCO Offshore Co.*, 2013 WL 3967165, *2 (W.D.La.).

### B. Standard for Allowing Out-of-Time Amendments

Fed. R. Civ. P. 13 (a) ("Compulsory Counterclaim") provides in pertinent part, "A pleading *must state* as a counterclaim any claim that–*at the time of its service*–the pleader has against an opposing party if the claim: . . . arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . . ." Fed. R. Civ. P. 13(a) (emphasis added). Thus, any claim arising out of the transaction or occurrence set forth in Iberiabank's complaint that Broussard had at the time of service of his counterclaim is compulsory. *Id.*; *Dean v. Ford Motor Credit Co.*, 885 F.2d 300, 302 (5th Cir.1989). If such claims were not alleged in Broussard's original counterclaim, then they must be asserted by an amended counterclaim. *Dean* at 302 (5th Cir.1989) (an amended complaint concerns allegations of events occurring prior to the original complaint). "A counterclaim which is

compulsory but is not brought is thereafter barred . . . ." *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469, n. 1 (1974); *Tank Insulation Intern., Inc. v. Insultherm, Inc.*, 104 F.3d 83, 85 (5th cir. 1997).

At the time of the filing at issue, the deadline for amendment of pleadings set forth in the scheduling order had expired. "Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired." *S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 536 (5th Cir. 2003). Rule 16(b) provides, "A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Four factors are relevant to good cause: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Fahim v. Marriott Hotel Services, Inc.*, 551 F.3d 344, 348 (5th Cir. 2008)(internal quotation marks omitted). "Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave." *S&W Enterprises* at 536.[2]

In contrast to compulsory counterclaims, any of Broussard's claims that arose *after* service of his original counterclaim must be asserted by a supplemental counterclaim. *See* Rule 13(e) ("The Court *may* permit a party to file a supplemental pleading asserting a counterclaim that matured or was acquired by the party after serving an earlier pleading") (emphasis added); *Williams v. Scott*, 211 F.3d 125 (5th Cir.2000) (supplemental complaint concerns allegations of events occurring after the filing of the original complaint). "'A counterclaim acquired by the defendant after he has answered will not be considered compulsory, even if it arises out of the same transaction as does the plaintiff's claim.'" *Young v. City of New Orleans*, 751 F.2d 794, 801 (5th Cir. 1985) (quoting 6 C. Wright &

---

[2] Rule 15(a)(2) provides, "The court should freely give leave when justice so requires."

A. Miller, *Federal Practice and Procedure* § 1411 at 55 (1971)). "On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). "The grant or denial of a motion to allow the filing of a supplemental counterclaim is within the trial court's discretion." *Insurance Concepts, Inc. v. Western Life Ins. Co.*, 639 F.2d 1108, 1114 (5th Cir. 1981). Factors to be considered include: (1) undue delay, bad faith or dilatory motive on part of the movant; (2) undue prejudice to the opposing party; and (3) futility. *See Chemetron Corp. v. Bus. Funds, Inc.*, 682 F.2d 1149, 1194 (5th Cir.1982), *vacated and remanded on unrelated grounds*, 460 U.S. 1007 (1983).[3]

### III. Analysis

#### A. Intentional Interference with Business Relations

The Louisiana Supreme Court recognizes a cause of action for tortious interference with business arising under La. Civ. Code art. 2315. *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 601 (5th Cir. 1981)(citing *Graham v. St. Charles St. Railroad*, 18 So. 707 (La. 1895)). "In Louisiana, the delict is based on the principle that the right to influence others not to deal is not absolute." *Junior Money Bags, Ltd. v. Segal*, 970 F.2d 1, 10 (5th Cir. 1992). "Louisiana law protects the businessman from 'malicious and wanton interference,' permitting only interferences designed to protect a legitimate interest of the actor." *Id.* (quoting *Dussouy* at 601) (internal quotation marks omitted). To succeed on such a claim, a plaintiff must show by a preponderance of the evidence that

---

[3] To the extent the parties address leave to supplement the counterclaim pursuant to Fed. R. Civ. P. 16(b), such reliance is misplaced. Rule 16(b) governs *amendment* of pleadings after expiration of a scheduling order deadline. Rule 16 does not require courts to set a deadline for *supplemental* pleadings, and the Court did not set such a deadline in the scheduling order issued in this matter.

the defendant improperly influenced others not to deal with plaintiff. *Id.* "It is not enough to allege that a defendant's actions affected the plaintiff's business interests; the plaintiff must allege that the defendant <u>actually prevented</u> the plaintiff from dealing with a third party." *Henderson v. Bailey Bark Materials*, 116 So.3d 30, 37 (La.App. 2013) (emphasis added); *see also Bogues v. Louisiana Energy Consultants, Inc.*, 71 So.3d 1128, 1135 (La.App. 2011). "The plaintiff must show that the defendant acted with actual malice." *Henderson* at 37. "Actual malice must be pleaded in the complaint." *Id.* "The jurisprudence has viewed this cause of action with disfavor." *Id.*

In support of this claim, Broussard alleges he was offered the position of Acadiana Market President with JD Bank on April 16, 2014. [Doc. 43, p. 3] On July 3, 2014, Iberiabank terminated Broussard and made a demand for arbitration. [Id. at p. 4] On August 1, 2014, "JD Bank's president informed his bank's key employees of the suit against Mr. Broussard," as well as the fact Iberiabank's attorney had advised JD Bank it might be named as a party to the suit as well. [Id. at 6-7] Iberiabank filed suit against Mr. Broussard in this Court on August 7, 2014. Soon thereafter, Iberiabank began issuing subpoenas to "several important bankers and executive officers of JD Bank demanding from them all communications however trivial with Mr. Broussard." [Id. at 6] On September 10, 2014, JD Bank informed Broussard that his employment offer would be deferred "'until a later date to be determined due to the suit filed by Iberia Bank.'" [Id. at 7 (emphasis omitted)] On March 4, 2015, JD Bank withdrew the Acadiana Market President offer, however "the bank discussed with Mr. Broussard the position of Chief Lending Officer," conditioned on a speedy dismissal of the suit against Mr. Broussard. [Id. at 8] According to Broussard, on May 21, 2015 at the deposition of Boyd Boudreaux, President of JD Bank, Broussard learned "for the first time . . . that the Chief Lending Officer position had been filled by JD Bank which would no longer extend

him an offer of employment, even after resolution of this lawsuit." [Id.]

Iberiabank argues Broussard's assertion of this claim is inexcusably untimely and therefore leave should be denied. According to Iberiabank, "Broussard admits he had already incurred at least some of these purported damages well before he found out the CLO position was filled yet failed to timely file his amendment." Iberiabank further contends Broussard was aware of this claim "as early as August 1, 2014, before the underlying suit was even filed." [Id.] Iberiabank concludes:

> Given that he alleges he suffered some damages prior to the amendment of pleadings deadline, his claim had accrued, and Broussard offers no reason for delaying bringing any cause of action based on these facts – much less a reason sufficient to satisfy the 'good cause' requirement of Rule 16. Instead, the magistrate judge excused a close to six-month delay because Broussard's damages allegedly *increased*.

[Doc. 44-1, p. 14 (emphasis in original)]

First, the Court notes neither party has informed this Court as to when Broussard first learned of the August 1, 2014 communication from JD Bank's president to his employees. The fact that JD Bank internally discussed "the suit against Mr. Broussard, including JD Bank's prospective involvement," does not show *Broussard* was aware of this alleged damage at that time, nor does either party specify exactly when Broussard actually became aware that internal discussion had occurred. Second, to the extent Iberiabank argues Broussard's claim accrued as of September 10, 2014 when JD Bank deferred its decision to hire Broussard for the Acadiana Market President position, the Court finds that argument is, also, misplaced. As set forth above, to state a claim for intentional interference with business relations under Louisiana law, "It is not enough to allege that a defendant's actions affected the plaintiff's business interests; the plaintiff must allege that the defendant *actually prevented the plaintiff from dealing with a third party*." *Henderson*, 116 So.3d

at 37 (emphasis added); *see also Bogues*, 71 So.3d at 1135. In this matter, the allegations support a finding that the September 10, 2014 deferral of Mr. Broussard's employment with JD Bank merely "affected," rather than "actually prevented," Broussard from conducting business with JD Bank.

According to Broussard, on March 4, 2015 he was notified JD Bank was withdrawing its offer of the Acadiana Market President position. However, according to Brousard, at that same time JD Bank began discussions with him regarding the position of Chief Lending Officer. [Doc. 43, p. 8] Broussard asserts it was not until Boyd Boudreaux's May 2015 deposition that Broussard learned that a few weeks prior to the deposition, Boudreaux had filled the Chief Lending Officer position. [Doc. 43, p. 8; *see also* Doc. 48, p. 8] Thus, Broussard argues he was not on notice Iberiabank's actions *had actually prevented him from conducting business with JD Bank* until Boyd Boudreaux's May 2015 deposition. [Doc. 48, pp. 8-11]

In light of the facts presented, the Court finds that pursuant to existing jurisprudence, the events giving rise to Broussard's claim for intentional interference with business relations appear to have arisen after the filing of Broussard's original counterclaim, and thus, this claim should be considered a supplemental claim rather than a compulsory counterclaim.[4] The factors the Court must

---

[4]Iberiabank asserts Broussard is judicially estopped from characterizing this claim as anything other than a compulsory counterclaim, because he referred to the claim as compulsory in his briefing to the Magistrate Judge. The Court disagrees. "Judicial estoppel prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding." *Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003)(internal quotation marks omitted). Two bases for judicial estoppel must be satisfied before a party can be estopped: "First, it must be shown that the position of the party to be estopped is clearly inconsistent with its previous one; and second, that party must have convinced the court to accept that previous position." *Id.* (internal quotation marks, alterations omitted). As this Court has not accepted the position argued to the Magistrate Judge (but abandoned in the briefing to this Court), judicial estoppel does not apply. To the extent the Magistrate Judge's reference to the claims as compulsory in his Order was not merely the result of imprecise language, that finding would be reversed as clearly erroneous and contrary to law. *See e.g. Dillard v. Sec. Pac. Brokers, Inc.*, 835 F.2d 607, 609 (5th Cir. 1988) ("[a] counterclaim acquired by a defendant after he has answered is not considered compulsory, even if it arises out of the same

look to when determining whether to permit a party to file a *supplemental pleading* are: (1) undue delay, bad faith or dilatory motive on part of the movant; (2) undue prejudice to the opposing party; and (3) futility. *See Chemetron Corp. v. Bus. Funds, Inc.*, 682 F.2d 1149, 1194 (5th Cir.1982), *vacated and remanded on unrelated grounds*, 460 U.S. 1007 (1983).

The first factor weighs in favor of granting leave. While there is no transcript of the hearing before the Magistrate Judge on the underlying motion, both parties agree the Magistrate Judge found Broussard's claim for intentional interference with business relations was not unduly dilatory, because "the new claims did not arise until the May 21 deposition. . . ." [Doc. 44-1, p. 7; *see also* Doc. 48, p. 8] No evidence has been put before the Court that the motion was the result of bad faith or a dilatory motive. The Magistrate Judge's finding on this issue was neither clearly erroneous nor contrary to law, as it was not until the May 2015 deposition that Broussard discovered Iberiabank had actually prevented him from doing business with JD Bank.

The second factor likewise weighs in favor of allowing the amendment. Iberiabank argues allowing the amendment will cause it "great prejudice," because: it "will have to re-depose several witnesses, including Broussard and Boudreaux; take the corporate deposition of JD Bank; and issue new discovery requests on both the factual allegations and Broussard's assertion of new damages – all at a substantial cost to IBERIABANK." [Doc. 44-1, pp. 15-16] The bank contends the prejudice is further compounded "by the fact that the expert deposition deadline is less than a month after IBERIABANK's new discovery deadline." [Id. at 16] Broussard argues allowing the newly asserted claims will not prejudice the bank, because: trial is not until February 1, 2016; at the time Broussard filed his opposition to this Appeal, Iberiabank had "taken all of the supplemental depositions it has

---

transaction as does plaintiff's claim).

requested to date"; and all relevant documents were previously produced. [Doc.48, pp. 15-16] As of this writing, no party has requested an extension to complete the discovery relating to the supplemental pleading already allowed by the Magistrate Judge, nor has any party requested a continuance of the trial date. The Court is not persuaded that allowing Broussard to supplement his pleadings with a claim of intentional interference with business relations would cause Iberiabank *undue* prejudice.

Finally, while the Court recognizes such claims are viewed with disfavor, nothing in the record has shown this claim to be "futile," or of such a nature it should be extinguished at this threshold stage.[5] In light of the foregoing, the Magistrate Judge's Order granting leave to file a claim of intentional interference with business relations is AFFIRMED.

## B. Negligence

In the alternative to his claim for intentional interference with business relations, Broussard sets forth a claim of negligence. By that claim, Broussard asserts as follows:

> 30.
>
> Alternatively, if IBERIABANK's actions described above were not intentional, they were negligent and in reckless disregard, and have caused Mr. Broussard to suffer monetary damages and damages to his professional business reputation. Under the flexible and broad instruction of La. Civ. Code Art. 2315:

---

[5] In support of this factor, Iberiabank argues, "Broussard's proposed amendment alleges that JD Bank's interest in a relationship with Broussard was 'severely chilled' as of August 1, 2014, *six days before* IBERIABANK brought this lawsuit." [Doc. 38, p. 13 (emphasis in original)] Therefore, Iberiabank contends, "Broussard's claim that any IBERIABANK allegation was the cause of an 'interference' with Broussard's potential relations with JD Bank is defeated by his own pleading." [Id.] Of course, this argument neglects the possibility JD Bank was concerned about the arbitration proceeding filed by Iberiabank against Broussard. More importantly however, as discussed above, this allegation is not the foundation for plaintiff's claim of intentional interference with business relations, and therefore has no bearing on futility. The remainder of Iberiabank's argument regarding futility is unhelpful, as it: (1) analyzes the claim under the theory of intentional interference with contract, which is a claim not before this Court; and (2) would require the Court to make factual determinations. [Id. at 13-15]

> "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."

> 31.

> Therefore, Mr. Broussard seeks recovery under La. Civ. Code Art. 2315 for all damages sustained by him because of IBERIABANK'S intentional or negligent and reckless disregard in filing and in persistence in this proceeding. Mr. Broussard has sustained damages in excess of $3MM.

[Doc. 43, p. 9]

Again, the only justification Broussard provides for the untimely assertion of this claim is that he was unaware of the claim until the deposition of Boyd Boudreaux in May of 2015.[6] [Doc. 35, p. 1] Unlike Broussard's claim of intentional interference with business relations, the Court finds no reason the allegations set forth above could not have been asserted, at the latest, by the February 3, 2015 deadline for amendment of pleadings contained in the scheduling order. The "negligence" of which Broussard accuses Iberiabank is the "intentional or negligent and reckless disregard in filing and in persistence in this proceeding." [Id.] This suit was filed on August 7, 2014. [Doc. 1] At the very latest, Broussard was aware the filing of the suit had allegedly caused him damages as of September 10, 2014, as that is the date upon which Broussard was made aware that his employment with JD Bank would be deferred "until a later date to be determined due to the suit filed by Iberia Bank." [Doc. 43, p. 7 (emphasis omitted)] Thus, at the very least, Broussard knew he had suffered the argued damages in the form of delayed compensation as of September 10, 2014. *See e.g. Austin v. Abney Mills, Inc.*, 824 So.2d 1137, 1148 (La. 2002) ("a cause of action may arise before a plaintiff sustains *all* of the damages occasioned by the defendant's negligence"). While Broussard filed his original counterclaim on September 5, 2014 [Doc. 8] - *i.e.* five days before he became aware JD

---

[6]The Court notes the briefing before it never specifically addresses this claim.

Bank was deferring his employment due to this suit - thereafter, he filed two amendments and/or supplements to his original pleading, in addition to the pleading at issue in this appeal. [Docs. 15, 26] The Court finds no compelling reason for Broussard to have waited until July of 2015 (a minimum of ten months after he was aware he had incurred his alleged damages due to the filing of this suit) to seek leave to add this claim, and Broussard has provided no satisfactory explanation for the delay to this Court.[7] Indeed, Broussard has pointed to no information in Boudreaux's May 2015 deposition having any bearing on notice of a claim of negligence. To the extent assertion of this claim was not waived by Broussard's failure to adequately address this claim in his briefing, the Court finds Broussard unduly delayed bringing a claim of negligence.[8] Accordingly, the Order of the Magistrate Judge is REVERSED to the extent it granted leave to assert a counterclaim of negligence.

### C. Abuse of Rights

"The abuse of rights doctrine is a civilian concept which is applied only in limited circumstances because its application renders unenforceable one's otherwise judicially protected rights." *Truschinger v. Pak*, 513 So.2d 1151, 1154 (La. 1987). "The principle is essentially that 'fault' in the delictual sense can be imposed upon a party who attempts to exercise a legal right with

---

[7]The only purported argument the Court has located from Broussard specifically addressing his claim of negligence was presented to the Magistrate Judge. There, Broussard stated, "In the event IBERIABANK's actions are not deemed intentional, Mr. Broussard has also specifically plead in the alternative a viable claim for negligence under Louisiana Civil code Article 2315." [Doc. 40, p. 16] This argument in no way addresses the timeliness of the assertion of this claim.

[8]Although Broussard's claim of negligence is not addressed by the parties (either to this Court or the Magistrate Judge), this claim, on its face, appears futile. Plaintiff has not alleged a duty, breach, cause-in-fact, etc. Rather, this claim appears more akin to a claim of malicious prosecution, which would be premature at this time. *Jones v. Soileau*, 448 So.2d 1268, 1271 (La. 1984) (one of the *prima facie* elements of a malicious prosecution claim is the bona fide termination of suit in favor of claimant).

the primary intention of harming or imposing a detriment upon another." *Insulation Technologies, Inc. v. Industrial Labor and Equipment Services, Inc.*, 122 So.3d 1146, 1151 (La.App. 2013). The doctrine applies only when one of the following conditions is met: (1) the predominant motive for exercise of the right is to cause harm; (2) there is no legitimate motive for exercise of the right; (3) exercise of the right violates moral rules, good faith, or elementary fairness; or (4) exercise of the right is for a purpose other than that for which it was granted. *Insulation Technologies* at 1151; *see also Steier v. Heller* 732 So.2d 787, 791 (La.App. 1999).

In Broussard's supplemental pleading, he sets forth the following allegations to support a claim for abuse of rights:

> 33.
>
> IBERIABANK'S actions, as alleged above, constitute an abuse of rights because IBERIABANK had no legitimate or serious interest and no benefit by exercising its right to take legal action, and there has been serious and substantial injury to Darryl Broussard as the result of being made a defendant in this matter.
>
> 34.
>
> Instead of terminating Mr. Broussard IBERIABANK could simply have discharged him with or without voluntarily paying the Success Bonus, or could have continued to prosecute its claim in the arbitration forum, in either case without insisting upon the unnecessary and collateral damage to Mr. Broussard's employment or employability. IBERIABANK'S exercise of its legal right to additionally file this fraud claim, without legitimate and serious interest on its part, causing grievous injury to Mr. Broussard, even in the absence of alleged or proven intent by IBERIABANK to harm Mr. Broussard, with reckless disregard for his employment and employability, constitutes an abuse of rights which the Court should not countenance.

[Doc. 43, pp. 9-10 (footnote omitted)]

Again, as with Broussard's other claims, the only explanation provided for the failure to assert this claim at an earlier time is that Broussard was unaware of the claim until the deposition

of Boyd Boudreaux in May of 2015.[9] As with Broussard's claim of negligence, the Court finds there is no reason the allegations set forth above could not have been set forth in accordance with the February 3, 2015 deadline contained in the scheduling order. The "abuse" of which Broussard accuses Iberiabank is the filing of this lawsuit, which occurred on August 7, 2014. Broussard has pointed to nothing in Boudreaux's May 2015 deposition bearing on notice of this claim. For these reasons, as well as those set forth with regard to Broussard's claim of negligence, *see* section III(C) *supra*, the Magistrate Judge's Order granting leave to file a claim of abuse of rights is REVERSED.

IV.    **Conclusion**

For the reasons provided above, the Order of the Magistrate Judge is AFFIRMED IN PART and REVERSED IN PART. The Order is affirmed to the extent it grants leave for defendant Darryl L. Broussard to file a supplemental counterclaim for intentional interference with business relations; the order is reversed to the extent it grants leave for defendant to assert counterclaims of negligence and abuse of rights.

THUS DONE AND SIGNED in Lafayette, Louisiana, this _15_ day of ~~November~~ December, 2015.

_____
REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

---

[9]As with his claim of negligence, the only argument specifically pertaining to this claim was made before the Magistrate Judge. There, Broussard stated:

> Mr. Broussard has also adequately plead a claim against IBERIABANK for abuse of rights. IBERIABANK's distinction of *Morse* is unprincipled. IBERIABANK presumptuously states Mr. Broussard's abuse of rights claim is meritless because he was not "faultless", suggesting that this court must decide the merits of the case in order to grant leave. This cart before the horse analysis is certainly outside the *S&W* factors now at issue.

[Doc. 40, pp. 15-16 (footnotes omitted)]