RECEIVED

AUG 3 0 2016

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| IBERIABANK | CIVIL ACTION NO. 6:14-CV-2448 |
| v. | JUDGE DOHERTY |
| DARRYL R. BROUSSARD, ET AL. | MAGISTRATE JUDGE WHITEHURST |

### MEMORANDUM RULING

Currently pending before the Court is a motion for partial summary judgment [Doc. 111], filed by plaintiff/counter-defendant IBERIABANK. Pursuant to its motion, IBERIABANK seeks dismissal of defendant/counter-plaintiff Darryl R. Broussard's claim for Intentional Interference with Business Relations.

**I.  Factual and Procedural Background**

IBERIABANK filed this suit against Darryl R. Broussard, alleging multiple claims arising out of Mr. Broussard's actions during his employment with IBERIABANK and its predecessor Teche Federal Bank ("Teche"). IBERIABANK is the successor to Teche, following the May 31, 2014 merger of the two banks. [Doc. 57-1, ¶ 1; Doc. 69-1, ¶ 1] Broussard served as the Senior Vice President and Chief Lending Officer of Teche prior to the merger. [Id. at ¶¶ 2]

On January 12, 2014, Broussard entered into an "Employment Agreement" with IBERIABANK. The Employment Agreement provided that as of the merger date, Broussard's employment with Teche would end and he would become an employee of IBERIABANK. [Doc. 111-3, p. 1] The agreement further provided Broussard's employment with IBERIABANK would

end on the "Conversion date," which was the date upon which IBERIABANK completed the conversion of Teche's branch and operating systems.[1] [Doc. 111-3, pp. 1, 2] The Employment Agreement contains certain non-competition, non-solicitation and non-recruitment clauses, restricting the foregoing activities for a period of two months following the end of the employment relationship. [Id. at 4] However, the Employment Agreement further provided that in the event Broussard violated any provision of the agreement, the post-employment period of the restrictive covenants was to run from the later of: (1) the date upon which the violation ceased, or (2) the date of any final, non-appealable judgment or settlement of a legal proceeding to enforce or uphold any provision of the agreement. [Id. at 5]

In April 2014, Broussard and Boyd R. Boudreaux, President of JD Bank, began discussing Mr. Broussard going to work for JD Bank. [Doc. 57-1, p. 4; Doc. 69-1, pp. 4-5] On May 1, 2014, Broussard accepted the position of Acadiana Market President with JD Bank, to commence after his employment with IBERIABANK ended. [Doc. 69-2, p. 328; Doc. 57-11, pp. 2-5] In May 2014, Broussard deleted numerous digital files from the Teche computer network. [Doc. 111-1, p. 3; Doc. 111-6, pp. 2-6] Thereafter, IBERIABANK became suspicious of Broussard's activities and hired an outside firm to conduct an investigation. [Doc. 57-17, p. 11] On July 3, 2014, following the investigation, IBERIABANK terminated Broussard's employment for cause. [Doc. 111-1, p. 2; Doc. 57-17, p. 12] The same day, IBERIABANK commenced an arbitration action against Broussard,

---

[1] The term of Broussard's employment could end earlier than the Conversion date under the following circumstances: (1) the parties mutually agreed to end Broussard's employment earlier, (2) upon the death of Broussard, (3) if Broussard were terminated by IBERIABANK; (4) if Broussard terminated his employment; or (5) by operation of law (i.e. if an order issued under the Federal Deposit Insurance Act removing or permanently prohibiting Broussard from participating in the conduct of the Bank's affairs). [Doc. 111-3, pp. 2, 6-7]

asserting claims for breach of contract, breach of statutory fiduciary duties, and fraud. [Id. at 3; Doc. 116-3, pp. 13-16] On July 7, 2014, counsel for IBERIABANK sent correspondence to Boyd Boudreaux of JD Bank, enclosing the arbitration demand against Broussard and requesting Mr. Boudreaux, JD Bank and its affiliates "take all appropriate steps to ensure the preservation and retention . . . of all documents" that might be relevant to the claims set forth in the arbitration. [Doc. 111-1, p. 3; Doc. 116-3, p. 4]

On August 7, 2014, IBERIABANK brought suit against Broussard in this Court, asserting claims not covered by the arbitration agreement. On February 3, 2015, the parties jointly moved to dismiss the arbitration proceedings, and all claims were brought before this Court. [Doc. 57-1, ¶ 15; Doc. 69-1, ¶ 15] Following multiple amendments and supplementations to the pleadings by both parties, the claims currently asserted by IBERIABANK against Broussard are: (1) Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, (2) Material Breach of the Change In Control Severance Agreement, (3) Breach of Fiduciary Duties, and (4) Unfair Trade Practices. [Doc. 23; Doc. 107] The counterclaims now asserted by Broussard against IBERIABANK are for: (1) breach of contract, (2) attorney's fees, and (3) intentional interference with business relations. [Doc. 8, Doc. 26, Doc. 96]

## II. Summary Judgment Standard

"A party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense - on which summary judgment is sought." Fed.R.Civ.P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

*Id.* at § (c)(1).

> As summarized by the Fifth Circuit:
>
> > When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

*Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir.1994)(internal citations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994). To the contrary, "[i]n reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir.2001).

## III. Applicable Law

The Louisiana Supreme Court recognizes a cause of action for tortious interference with business arising under La. Civ. Code art. 2315. *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 601 (5th Cir. 1981)(citing *Graham v. St. Charles St. Railroad*, 18 So. 707 (La. 1895)). "In Louisiana, the delict is based on the principle that the right to influence others not to deal is not absolute." *Junior Money Bags, Ltd. v. Segal*, 970 F.2d 1, 10 (5th Cir. 1992). "Louisiana law protects the businessman from 'malicious and wanton interference,' permitting only interferences designed to protect a legitimate interest of the actor." *Id.* (quoting *Dussouy* at 601). To succeed on such a claim, a plaintiff must show by a preponderance of the evidence that the defendant improperly influenced others not to deal with plaintiff. *Id.* Multiple lower courts have found, "It is not enough to allege defendant's actions affected the plaintiff's business interests; the plaintiff must allege that the defendant <u>actually prevented</u> the plaintiff from dealing with a third party." *See e.g. Henderson v. Bailey Bark Materials*, 116 So.3d 30, 37 (La. App. 2 Cir. 2013) (emphasis added); *St. Landry Homestead Federal Sav. Bank v. Vidrine*, 118 So.3d 470, 490 (La. App. 3 Cir. 2013); *Marshall Investments Corp. v. R.P. Carbone Co.*, 2006 WL 2644959, *5 (E.D.La.).

Louisiana jurisprudence views this cause of action with disfavor. *Henderson* at 37; *JCD Mktg. Co. v. Bass Hotels and Resorts, Inc.*, 812 So.2d 834, 841 (La. App. 4 Cir. 2002). "Louisiana courts have limited this cause of action by imposing a malice element, which requires that the plaintiff show the defendant acted with actual malice." *JCD Mktg.* at 841 (citing *Dussouy* at 602).

> Although its meaning is not perfectly clear, the malice element seems to require a showing of spite or ill will, which is difficult (if not impossible) to prove in most commercial cases in which conduct is driven by the profit motive, not by bad feelings. In fact, there appear to be no reported cases in which anyone actually has been held liable for the tort.

*Id.* (quoting George Denegre, Jr., et al., *Tortious Interference and Unfair Trade Claims: Louisiana's Elusive Remedies for Business Interference*, 45 Loy. L. Rev. 395, 401 (1999)).

**IV.   Analysis**

    **A.   Whether there is a genuine dispute that IBERIABANK improperly influenced JD Bank from dealing with Broussard**

Broussard argues IBERIABANK improperly influenced JD Bank not to deal with Broussard by sending JD Bank a litigation hold letter and attaching a copy of the arbitration demand against Broussard four days after Broussard's termination. [Doc. 116, p. 6] According to Broussard, "IBERIABANK could have merely sent Boudreaux a 'routine litigation hold letter'" and not enclosed the arbitration demand "that accused Broussard of 'numerous acts of disloyalty,' 'personal dishonesty,' and 'willful misconduct.'" [Id. at 6] Broussard further contends by sending the litigation hold letter with the attached arbitration demand, IBERIABANK "foreshadowed JD Bank's involvement in the litigation but never made JD Bank a party." [Id. at 7] Thus, Broussard argues a genuine issue of material fact exists as to whether IBERIABANK sent Boudreaux the litigation hold letter and arbitration demand "to improperly influence JD Bank to stay far away from Broussard, and not to protect some business interest." [Id.]

IBERIABANK responds it "did nothing more than institute a lawsuit against Broussard . . ., based on a good-faith belief (later confirmed in discovery) that Broussard . . . had deleted Teche's digital data," and states it took no coercive action to prevent Broussard from negotiating for a position at JD Bank. [Doc. 111-2, p. 5] IBERIABANK notes Broussard testified he had informed Boudreaux of the arbitration suit as early as July of 2014, which was prior to IBERIABANK's transmission of the arbitration demand to JD Bank. [Doc. 111-7, p. 12] IBERIABANK further notes

on January 16, 2015, after it filed this suit against Broussard, it agreed to an amendment of the Employment Agreement, which removed the prohibition against Broussard accepting employment with IBERIABANK competitors. [Id.] According to the bank, this fact "actually *enabled* Broussard's going to work for JD Bank. . . ." [Id.] IBERIABANK additionally notes according to Broussard's counterclaim, in March 2015 - i.e., approximately eight months *after* IBERIBANK sent JD Bank the arbitration demand - Broussard was in negotiations with JD Bank for a position as Chief Lending Officer.[2] [Doc. 111-2 at 6] Thus, IBERIABANK concludes it did not improperly interfere with Broussard's negotiatiations with JD Bank, as "[a]t most, JD Bank's decision not to hire Broussard was an 'incidental effect' of the legal proceedings, which is insufficient to support an intentional interference cause of action." [Id.]

To summarize, Broussard has pointed to a litigation hold letter, accompanied by an arbitration demand, as the basis for his claim that IBERIABANK improperly influenced JD Bank from dealing with Broussard. The litigation hold letter requested that JD Bank retain and preserve all documents relating to the claims set forth in the arbitration demand; thus, the grounds for the arbitration demand were pivotal to the request of the litigation hold. Additionally, the Court finds at the time IBERIABANK sent the letter to JD Bank, it had a good-faith, reasonable belief that Broussard had improperly handled IBERIABANK's proprietary data and potentially shared that data with IBERIABANK's competitor JD Bank. Louisiana law permits "interferences designed to protect a legitimate interest of the actor." *Junior Money Bags* at 10. The Court finds IBERIABANK's request that JD Bank preserve information relating to claims regarding the misuse of

---

[2]While Broussard does admit he was in negotiations with JD Bank in March 2015 for the position of Chief Lending Officer, Broussard qualifies, "JD Bank again conditioned the offer on a speedy dismissal of IBERIABANK's suit against Mr. Broussard." [Doc. 43, ¶ 25]

IBERIABANK's proprietary information is an interference "designed to protect a legitimate interest" of IBERIABANK. *Junior Money Bags* at 10. The Court further finds Broussard has pointed to no "improper" influence exerted by IBERIABANK upon JD Bank. Rather, any interference by IBERIABANK to Broussard's dealings with JD Bank was an incidental effect of the actions taken by IBERIABANK in an effort to protect its legitimate interest in safeguarding its proprietary data.

### B. Whether a genuine issue exists with regard to whether IBERIABANK acted with malice

Broussard contends malice can be inferred in this matter, based on the following two events. First, Broussard contends one month after IBERIABANK fired him and filed the arbitration proceeding, it then filed suit in this Court, accusing "Broussard of 'stealing' thousands of confidential and proprietary files when it had absolutely no evidence in support of such a claim."[3] [Doc. 116, p. 8] According to Broussard, "malice may be inferred from IBERIABANK's lack of probable cause for claiming Brousard had stolen proprietary information."[4] [Id.] Second, Broussard contends the fact that IBERIABANK did not seek a temporary restraining order or preliminary injunction "to stop Broussard's use and or disclosure of such information" shows there was "no truth or urgency to the allegations," and on these facts, malice may be inferred. [Id. at 8-9]

IBERIABANK responds that it will show at trial that Broussard deleted many propietary documents belonging to IBERIABANK. [Doc. 120-1, p. 4] In support, IBERIABANK cites to *Broussard's* testimony where *Broussard confirms* he deleted many e-mails, documents, production

---

[3] The Court notes Broussard does <u>not</u> argue IBERIABANK sent a copy of the complaint filed in this Court to JD Bank.

[4] Broussard argues in his brief that "malice may be inferred from the lack of probable cause. . . ." [Doc. 116, p. 5 (quoting *Vidrine v. U.S.*, 2012 WL 253124, *47 (W.D.La.)] However, the jurisprudence upon which he relies in support of that position is taken from malicious prosecution cases.

reports, employee evaluations, and other data containing confidential information and customer information, without the permission of IBERIABANK. [Doc. 111-6, pp. 2-6] With regard to injunctive relief, IBERIABANK argues there was no need to seek same, as JD Bank was cooperating with IBERIABANK and, in fact, returned all confidential data it located to IBERIABANK.[5] Under these facts, the Court finds Broussard has not shown IBERIABANK acted with malice.

**V.      Conclusion**

For the reasons provided above, IBERIABANK's motion for partial summary judgment is GRANTED, and Broussard's claim for intentional interference with business relations is DISMISSED.

THUS DONE AND SIGNED in Lafayette, Louisiana, this _30_ day of August, 2016.

_____
REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

---

[5] The Court notes the data JD Bank returned was taken by a co-employee of Broussard's at IBERIABANK; it was not, however, taken by Broussard.